IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:08cr195-MHT |
| **VALERIE PATTERSON** | ) | (WO) |

OPINION AND ORDER

Defendant Valerie Patterson appeared before the court on April 7, 2009, for sentencing.  The court accepted Patterson's guilty plea with respect to counts 1 and 3 of the indictment, which charged her, respectively, with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and simple possession of marijuana, in violation of 21 U.S.C. § 844.

After hearing argument from the parties, the court continued the sentencing hearing so that it could consider whether Patterson possessed a firearm "in connection with another felony offense" for the purposes of U.S.S.G. §2K2.1(b)(6).  For the reasons discussed below, the court concludes, and so finds, that Patterson did not possess a firearm "in connection with another

felony offense" and that, accordingly, the four-level increase to her offense level that accompanies such a finding does not apply.

## I. BACKGROUND

Valerie Patterson was sentenced in December 2007 to five years probation for her role in an embezzlement from an "Indian tribal organization" gaming establishment pursuant to 18 U.S.C. § 1163.  In January 2008, probation officers visited Patterson's home to conduct an initial home inspection.

Patterson and her two small children were present when the officers arrived, and Patterson indicated that her sister was also currently in the residence and taking a shower.  While one of the probation officers accompanied Patterson to a bathroom to collect a urine sample, another began looking around the house and found a box of ammunition and a handgun in the kitchen on top of the microwave.  Patterson stated that she did not know

the gun was in the house; that the gun had formerly belonged to her; and that she had given the gun to her sister after her conviction. Her sister shouted from the shower that she had not brought the gun into the house, but then later admitted to bringing the gun into the house after seeing the probation officers present in the home. Patterson's sister further stated that Patterson had recently given her the gun after obtaining a felony conviction and that she had brought the gun over when she came to do her laundry. Patterson admitted, however, that the ammunition was hers and that she had not removed it from her home in the weeks since her conviction.

Probation officers continued to search the residence and entered a spare bedroom in which a television was being used as a surveillance monitor looking out onto the front of the house. Near the monitor, probation officers saw a black backpack on the floor of an open closet. Officers searched the bag and found two sandwich bags

containing a small amount of marijuana. A box of sandwich bags was also found in the closet.

Patterson was questioned about the television monitor and the small amount of marijuana. (Tests later confirmed that the amount of marijuana was 59.7 grams.) She stated that her cousin had been staying in her home and that he had sold drugs. She further stated that she had kicked him out of the house two days earlier.

Probation officers left the home and petitioned for a warrant. Patterson was arrested, her probation revoked, and a jail sentence of 30 months imposed pursuant to her previous conviction. Patterson has no criminal history other than her embezzlement conviction.

Patterson is 35 years old and has five children. All of her children resided with her until she was incarcerated based on the events described above.

## II. DISCUSSION

The United States Sentencing Guidelines provide for (at least) a four-level enhancement if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. §2K21.(b)(6). Application Note 14 provides some detail about how this enhancement is meant to apply. First, Application Note 14(A) makes clear that "in connection with" captures only use or possession that "facilitated or had the potential of facilitating" another felony offense. Second, Application Note 14(B) directs that, in a drug-trafficking offense, if the firearm is found in "close proximity" to drugs, the "potential of facilitating" standard is automatically satisfied.[1] Thus, the Guidelines essentially employ "close proximity" as a proxy for facilitation in cases involving drug-

---

1. Application Note 14(B) also directs, although it is not relevant to the facts here, that the "potential of facilitating" requirement is met whenever a defendant "finds and takes a firearm" while committing a burglary, even if the gun was not used in any other manner during the offense.

trafficking offenses, thereby providing for a way to cross the evidentiary threshold necessary to find a connection between the gun and the felony offense. This path can be easier to travel in many circumstances than the general, but often more exacting, holistic and context-based inquiry that characterizes the "facilitation" standard as it is used when other types of felony offenses are involved.[2]

Thus, the court must answer a sequence of questions in Patterson's case. First, did Patterson commit "another felony offense?" Second, was Patterson's possession of a firearm "in connection with" that offense? The court's analysis of the second question depends on whether the other felony offense was a drug-trafficking offense. If Patterson committed a drug-trafficking offense, the court must apply the "close proximity" standard to assist its factual determination

---

2. For all other crimes, the "facilitation" standard adopted by the Guidelines mirrors the standard announced in Smith v. United States, 508 U.S. 223 (1993).

of whether the firearm "facilitated or had the potential of facilitating" her other offense.

This inquiry is, by necessity, heavily dependent on the factual context of a particular case. United States v. Osborne, 590 F. Supp. 2d 1330, 1332 (M.D. Ala. 2008) (Thompson, J.). Moreover, as with any sentencing enhancement, the government bears the burden of establishing the required facts by a preponderance of the evidence. United States v. Kinard, 472 F.3d 1294, 1298 (11th Cir. 2006) (per curiam).

A.  "Another Felony Offense"

Patterson pled guilty to a misdemeanor charge of simple possession of marijuana. The government argues, however, that Patterson's conduct actually constitutes a drug-trafficking offense.[3] Thus, in order to apply the §2K2.1(b)(6) enhancement, the court must find that the

---

3. This is the only other felony offense that the government alleges Patterson to have committed "in connection with" her felon-in-possession offense.

7

evidence supports essentially reclassifying Patterson's crime as a (more serious) drug-trafficking felony. Such an approach, although it could lead to confusion and to mini-trials on the elements of various potential offenses, is apparently contemplated by Application Note 14(C), which explains that "another felony offense" can include potential felonies "regardless of whether a criminal charge was brought[] or a conviction obtained."

The government argues that Patterson possessed a firearm "in connection with" possession of marijuana with intent to distribute it, which is a felony under 21 U.S.C. § 841. The Supreme Court has suggested that such an offense qualifies as "trafficking" because it involves "some sort of commercial dealing."[4] Lopez v. Gonzales, 549 U.S. 47, 53-54 & n.4 (2006) (noting that federal law considers "trafficking offenses as felonies" and citing

---

4. Thus, even if the colloquial meaning of the term "trafficking" typically evokes a larger scale commercial endeavor and is perhaps not ordinarily used to describe small-level dealing at the end of the supply chain, the legal meaning of the term as used throughout federal criminal law appears to cast a more expansive net.

to 21 U.S.C. § 841); cf. 18 U.S.C. § 924(c)(2) (defining "drug trafficking crime," for that statutory subsection, to mean any felony publishable under the Controlled Substances Act, 21 U.S.C. § 801 et seq.). Therefore, if the government can prove that Patterson possessed the marijuana with the intent to distribute it, then it has proven that she committed another felony offense and that the felony offense she committed was a drug-trafficking offense.

The facts of this case simply do not support a finding that Patterson committed the felony of possession with intent to distribute marijuana (or any other drug-trafficking crime). No money was found anywhere in the home, let alone in Patterson's possession or near the drugs. Moreover, there is no evidence that Patterson, who is 35 years old, has ever before engaged in the distribution of drugs. Furthermore, the amount of marijuana found was relatively small. Most importantly, however, the evidence does not contradict Patterson's

9

explanation for the presence of the drugs: that her cousin had been selling drugs and that she had promptly kicked him out just two days earlier. The drugs were found neither in Patterson's room nor in a common area of the residence.[5] While the government argues that the marijuana was packaged in two plastic bags, that no other drug paraphernalia was found in the house,[6] and that the bedroom containing the small quantity of marijuana had a surveillance monitor, each of these facts is entirely consistent with the explanation offered by Patterson. Indeed, the government must prove not that someone had, at some point, intended to sell the marijuana that it

---

5. Patterson's story is perhaps given more credence by her admission that the ammunition was hers. Because Patterson readily admitted to a federal crime, her denials of any involvement in selling small amounts of marijuana are slightly more reliable under the circumstances.

6. The fact that no evidence suggests that Patterson smoked marijuana is not any more evidence that Patterson must have been selling marijuana than it is evidence to corroborate the evidence that she is not a drug user and that she kicked her cousin out after discovering his drug dealing.

seized, but that Patterson herself had such an intent. The court is not convinced, from the evidence, of that conclusion.

Nonetheless, the government apparently expects the court simply to disbelieve Patterson's story even though it is consistent with both the sparse factual background concerning the events in question and the Presentence Investigation Report's description of Patterson's personal background.  The government argues that Patterson failed to remove the drugs after she supposedly kicked out her cousin.  Perhaps, though, Patterson did not know about the drugs in the closet or did not feel comfortable going through her cousin's possessions or taking control of the marijuana to dispose of it. Perhaps she had not yet gotten around to cleaning it out. In any case, the burden is not hers.  Moreover, even if she consciously failed to remove the marijuana, such behavior is consistent with her plea to knowing

possession of the small amount of marijuana and does not convince the court that she intended to sell it.

Finally, the government argues that the fact that Patterson did not identify her cousin by name is proof that he did not exist. Despite the lack of other evidence that Patterson herself was engaged in drug distribution, this argument fails for more obvious reasons. As a preliminary matter, there is no evidence that Patterson was even asked to identify her cousin. More importantly, it cannot be surprising that a person would not readily offer to law enforcement the name of a close family member knowing that such identification might implicate that person in serious criminal wrongdoing. The government, aside from this fleeting suggestion in its memorandum submission, has not made any attempt to offer any further evidence, let alone evidence supporting its conjecture that Patterson's cousin may not exist. The court is not convinced, by the evidence, of the government's argument.

Because the court is not convinced, by the evidence, that Patterson committed the elements of possession with intent to distribute marijuana, Patterson did not commit "another felony offense," and the four-level enhancement to her offense level is inapplicable.[7]

B. "In Connection With"

Nonetheless, even if the court had concluded that Patterson committed a drug-trafficking offense, the government has not established that the firearm "facilitated or had the potential of facilitating" that offense. The evidence shows neither that the firearm and the drug-related materials were found "in close

---

7. Unlike in many other cases--this court's recent opinion in Osborne is a helpful example--there is no need for further analysis. In Osborne, the defendant's possession of ten ecstasy pills was a felony under Alabama law, and thus, once the court determined that the defendant had not committed a drug-trafficking offense, it still had to determine if the firearm was possessed "in connection with" the state-law felony possession of the ecstasy. Here, however, because the court has determined that Patterson did not commit "another felony offense," no similar inquiry is needed.

proximity," nor that the firearm facilitated the distribution of marijuana in some other way.

The first question the court addresses is whether the firearm was in "close proximity" to the marijuana. The word "proximity" means "the quality or state of being proximate, next, or very near." Similarly, the word "proximate" means "very near or "immediately adjoining." Webster's Third New International Dictionary 1828 (2002). Thus, particularly if the word "close" is not to be rendered redundant (and even if it were), the term "close proximity" is meant to connote a particularly extreme or immediate nearness in physical location.

The court recognizes that it has employed the definition featured in Webster's Third New International Dictionary, which is a 'descriptive' dictionary, unlike Webster's Second New International Dictionary, which is 'prescriptive.' Thus, the philosophical approach underlying the Third version is to capture words as they are used and not, as in the Second version, as they

14

should be used in some more objective sense--a normative question that scholars of English lexicon debate in perpetuity.  In any case, a descriptive understanding of these terms seems appropriate when the court is attempting to understand what the Sentencing Commission likely understood by its use of the term "close proximity."

The firearm was found in the kitchen of Patterson's home, on top of a microwave.  A small amount of marijuana was found in a bedroom elsewhere in the house.  While "close proximity" is surely satisfied by the simultaneous possession of drugs and firearms on the person of an offender, cf. United States v. Jackson, 276 F.3d 1231, 1234 (11th Cir. 2001) ("[A] defendant possesses a firearm 'in connection with' possession with intent to distribute heroin where he possesses both the gun and the narcotics on his person at the same time.") (citing United States v. Gainey, 111 F.3d 834, 837 (11th Cir. 1997), the evidence presented here does not convince the court to

15

expand the reach of "close proximity" to the entire house.  Here, there is no evidence in the record about the size of the house or the proximity of the rooms.  There is no evidence that Patterson was selling drugs throughout house.  There is no evidence that the firearm and the drug-related materials were in the same cabinet or even in the same small room, let alone on Patterson's person or within arm's reach.  Because "close proximity" is meant to denote extreme or immediate nearness such that it is irrefutably presumed that the firearm is connected to the commission of the offense involving the drugs, the court is not convinced, and thus does not find from the evidence, that the phrase "close proximity," or even the word proximity, applies in this case."[8]

---

8.  While there is a dearth of Eleventh Circuit law interpreting the "close proximity" standard, the few cases to address it shed light on the facts that describe the quintessential "close proximity" case.  See, e.g., United States v. Meryl, 2009 WL 943574 at *3 (11th Cir. Apr. 9, 2009) (unpublished) (holding that it was not error to find "close proximity" when firearm and drugs were found in the same cabinet in the defendant's kitchen); United States v. Purifoy, 264 Fed. Appx. 773
(continued...)

16

The evidence would also otherwise be insufficient to conclude that the firearm and the drug-related materials were possessed "in connection with" each other. While the government correctly notes that a surveillance monitor was found near the drugs in a bedroom, there is simply not enough factual detail to conclude that a firearm found on top of a microwave in the kitchen (elsewhere in the house) "facilitated or had the potential of facilitating" the distribution of the small amount of marijuana. See Osborne 590 F.Supp.2d at 1335-36 (recognizing the difficulty in cabining the reach of the term "potential" and holding that the court must be careful to examine the facts of each case to see if the possession of the firearm was truly connected to the drug crime, for instance by emboldening the defendant or by being used to protect the drugs). For example, utterly insufficient detail has been provided about the house

---

8.   (...continued)
(11th Cir. 2008) (upholding enhancement when firearm was found on the ground dropped by fleeing defendant who also carried drugs and a large amount of cash on his person).

17

(such as a diagram or description of the layout and dimensions) for the court to conclude with any reliability that the firearm was connected to a putative drug-distribution offense.  Neither the weapon nor any drugs or money were physically in Patterson's possession, and it is simply too tenuous a conclusion that the weapon could have emboldened her in the distribution of drugs, an activity which, it should be noted, <u>was not occurring contemporaneously</u>.  There is no evidence that, had Patterson engaged in drug distribution, the gun was ever involved.

Moreover, the evidence is consistent with the gun simply being present in the house to protect the family or any number of other possessions.  In addition, the amount of marijuana was small and relatively inexpensive. <u>See</u> <u>Osborne</u> 590 F.Supp.2d at 1336 (noting that, the more expensive the stash of drugs, the more likely the gun is not present by accident but is rather present as a means to protect the drugs). The evidence, therefore, is

18

insufficient to convince the court to apply the enhancement. See Smith v. United States, 508 U.S. 223, 237-238 (1993) (noting that "facilitate or potential to facilitate" is not meant to apply if the gun was present as a "result of accident or coincidence").

Thus, even if the government had been able to prove that Patterson had committed a drug-trafficking crime, it simply did not meet its burden of proving by a preponderance of the evidence that the drug-trafficking crime was connected to the gun that probation officers found elsewhere in the house.

\* \* \*

Accordingly, it is ORDERED that defendant Valerie Patterson's objection to the application of the four-level enhancement pursuant to U.S.S.G. §2K2.1(b)(6) is sustained.

DONE, this the 29th day of July, 2009.

    /s/ Myron H. Thompson  
**UNITED STATES DISTRICT JUDGE**